[This decision has been published in *Ohio Official Reports* at 96 Ohio St.3d 375.]

KELLEYS ISLAND CADDY SHACK, INC., APPELLANT, *v.* ZAINO, TAX COMMR., APPELLEE.

[Cite as *Kelleys Island Caddy Shack, Inc. v. Zaino,* 2002-Ohio-4930.]

*Taxation—Sales tax—Resort-area tax—R.C. 5739.101 does not violate the Uniformity Clause, Section 26, Article II of the Ohio Constitution—Tax on transporting persons or property to or from village of Kellys Island is constitutional.*

(No. 2001-1102—Submitted June 5, 2002—Decided October 2, 2002.)

APPEAL from the Board of Tax Appeals, No. 2000-B-819.

_____

**COOK, J.**

**{¶1}** In Am.Sub.H.B. No. 327, 145 Ohio Laws, Part III, 5409, 5410-5411, the General Assembly enacted R.C. 5739.101, which permits a municipal corporation or township to declare itself to be a "resort area" if it meets certain statutory criteria. As a resort area, the legislative authority of the municipal corporation or township may levy an excise tax on vendors for the privilege of making sales in, or transporting persons or property to or from, the municipality or township. R.C. 5739.101(B). Finding that it met the statutory criteria, the village of Kelleys Island declared itself to be a resort area and levied the resort-area tax.

**{¶2}** Appellant, Kelleys Island Caddy Shack, Inc. ("Caddy Shack"), a vendor in the village of Kelleys Island, paid the resort-area tax and filed a refund request with the Tax Commissioner under R.C. 5739.104, contending that R.C. 5739.101 violated the Uniformity Clause of Section 26, Article II of the Ohio Constitution. The Tax Commissioner denied the request for refund, and Caddy Shack appealed to the BTA. Because the Board of Tax Appeals ("BTA") does not have jurisdiction to

declare statutes unconstitutional, it affirmed the Tax Commissioner. See *Cleveland Gear Co. v. Limbach* (1988), 35 Ohio St.3d 229, 231, 520 N.E.2d 188.

{¶3} The matter is now before the court upon an appeal as of right.

{¶4} For the reasons that follow we find that R.C. 5739.101 does not violate Section 26, Article II of the Ohio Constitution.

{¶5} R.C. 5739.101(A) sets forth the following three criteria that must be met for a municipal corporation or township to declare itself a resort area:

{¶6} "(1) According to statistics published by the federal government based on data compiled during the most recent decennial census of the United States, at least sixty-two per cent of total housing units in the municipal corporation or township are classified as 'for seasonal, recreational, or occasional use';

{¶7} "(2) Entertainment and recreational facilities are provided within the municipal corporation or township that are primarily intended to provide seasonal leisure time activities for persons other than permanent residents of the municipal corporation or township;

{¶8} "(3) The municipal corporation or township experiences seasonal peaks of employment and demand for government services as a direct result of the seasonal population increase."

{¶9} According to Caddy Shack, based on the 1990 Census of Population and Housing issued by the United States Department of Commerce, a total of three municipalities and townships in Ohio meet the 62 percent seasonal-housing requirement set forth in R.C. 5739.101(A)(1): the village of Kelleys Island (Erie County) and the village and the township of Put-in-Bay (Ottawa County).

{¶10} Caddy Shack contends that R.C. 5739.101 violates the Uniformity Clause of the Ohio Constitution, which requires that "[a]ll laws, of a general nature, shall have a uniform operation throughout the State * * *." When we consider the constitutionality of this or other legislation passed by the General Assembly, we presume it to be constitutional and will not declare it to be unconstitutional unless it

"appear[s] beyond a reasonable doubt that the legislation and constitutional provisions are clearly incompatible." *State ex rel. Dickman v. Defenbacher* (1955), 164 Ohio St. 142, 57 O.O. 134, 128 N.E.2d 59, paragraph one of the syllabus.

{¶11} In order to determine the constitutionality of legislation under Section 26, Article II of the Ohio Constitution, we must answer two questions: "(1) whether the statute is a law of a general or special nature, and (2) whether the statute operates uniformly throughout the state." *Desenco, Inc. v. Akron* (1999), 84 Ohio St.3d 535, 541, 706 N.E.2d 323.

{¶12} The subject matter of R.C. 5739.101 is an excise tax. "Historically, tax statutes have been viewed by this court to be of a general nature." *State ex rel. Zupancic v. Limbach* (1991), 58 Ohio St.3d 130, 138, 568 N.E.2d 1206; see, also, *State ex rel. Wilson v. Lewis* (1906), 74 Ohio St. 403, 78 N.E. 523 ("That taxation as the subject of legislation is of a general nature is established by a uniform course of decisions"). Thus, in accordance with well-established precedent, we consider R.C. 5739.101 to be of a general nature.

{¶13} We next determine whether the resort-area tax legislation operates uniformly throughout the state. We have described the uniformity required by Section 26, Article II as follows:

{¶14} "This section of the constitution requires that laws of a general nature shall have not only an operation, but a uniform operation throughout the state. * * * [T]hat is, [a] law must operate uniformly on the named subject-matter in every part of the state, and when it does that it complies with this section of the constitution." *State v. Nelson* (1894), 52 Ohio St. 88, 98, 39 N.E. 22.

{¶15} Uniformity does not require that the statute actually have current application in every county. "If a law is sufficiently general in its terms to comprehend all localities, persons, and things, it is not defeated and rendered void because there are certain localities in the state where conditions are such that there is no person or thing to which the law can be applied." *State ex rel. Stanton v. Powell*

(1924), 109 Ohio St. 383, 386-387, 142 N.E. 401. As we explained in *State ex rel. Wirsch v. Spellmire* (1902), 67 Ohio St. 77, 86, 65 N.E. 619, " '[u]niform operation throughout the state' means universal operation as to territory; it takes in the whole state. And, as to persons and things, it means universal operation as to all persons and things in the same condition or category. When a law is available in every part of the state as to all persons and things in the same condition or category, it is of uniform operation throughout the state."

{¶16} In *State ex rel. Zupancic v. Limbach* (1991), 58 Ohio St.3d 130, 568 N.E.2d 1206, the statute in question applied a special property-tax distribution formula to power plants with an initial equipment cost exceeding $1 billion. At the time, there was only one power plant in the state with equipment costing more than $1 billion. Nevertheless, we stated that "a statute is deemed to be uniform despite applying to only one case so long as its terms are uniform and it may apply to cases similarly situated in the future." Id. at 138, 568 N.E.2d 1206.

{¶17} Here, although there are only three areas in the state that currently qualify for resort-area status under R.C. 5739.101(A)(1), there are no limitations or restrictions to prevent other municipal corporations or townships from qualifying in the future. The terms of R.C. 5739.101 are uniformly applicable to all qualifying municipal corporations or townships in the state and to all the vendors therein.

{¶18} The current resort-area tax replaced an "island" tax, Am.Sub.H.B. No. 15, 140 Ohio Laws, Part I, 1461, 1462, which violated Section 26, Article II of the Ohio Constitution. *Put-In-Bay Island Taxing Dist. Auth. v. Colonial, Inc.* (1992), 65 Ohio St.3d 449, 605 N.E.2d 21. Caddy Shack would have us decide this case the same way we decided *Put-In-Bay*. The statutory scheme at issue in this case, however, differs from the one at issue in *Put-In-Bay*.

{¶19} The tax in *Put-In-Bay* was an excise tax levied on vendors engaged in making sales on "islands" in Ohio. Because the tax in *Put-In-Bay* applied only to islands, its application was limited to a finite number of *locations* in the state. That

geographic limitation offended the Uniformity Clause. In contrast to the limited island legislation in *Put-In-Bay*, the current resort-area legislation is open-ended. Because it is *possible* for *any* municipality or township throughout the state to become a resort area in the future, given a sufficient change in circumstances, we cannot say beyond a reasonable doubt that R.C. 5739.101 is clearly incompatible with Section 26, Article II of the Ohio Constitution. Accordingly, we hold that the resort-area legislation is constitutional.

Decision affirmed.

MOYER, C.J., DOUGLAS, RESNICK, F.E. SWEENEY and LUNDBERG STRATTON, JJ., concur.

PFEIFER, J., dissents.

_____

**PFEIFER, J., dissenting.**

**{¶20}** I dissent because I believe that the majority's decision may be the first cut in an eventual whittling away of the Uniformity Clause. While we can conceive of a way that vendors in communities other than Put-in-Bay and Kelleys Island might some day be subject to the resort tax, the reality is that the vendors on the islands are the only targets of this tax, just as they were in *Put-In-Bay Island Taxing Dist. Auth. v. Colonial, Inc.* (1992), 65 Ohio St.3d 449, 605 N.E.2d 21. Perhaps the majority believes that this court should have found that the island tax in *Put-In-Bay* satisfied the Uniformity Clause, since another ice age might yet produce another Lake Erie island that would be subject to the tax. It's conceivable.

**{¶21}** In my mind, the resort tax is the island tax in different words. The framers of the Ohio Constitution included the Uniformity Clause for a reason. It should not be undone by legislation by thesaurus.

_____

Michael J. Yemc, Jr. and John L. Alden, for appellant.

Betty D. Montgomery, Attorney General, and James C. Sauer, Assistant Attorney General, for appellee.

_____